**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

MISAEL CORDERO,

    Plaintiff,

v.

AMY EMRICH, *et al.*,

    Defendants.

Civil Action No. 20-5654 (RK) (JTQ)

**MEMORANDUM ORDER**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon *pro se* Plaintiff Misael Cordero's ("Plaintiff") Motion for Preliminary Injunction. (ECF No. 100, "PI".) Defendants Amy Emrich and Tina Cortes ("Defendants") filed a brief in Opposition to Plaintiff's Motion. (ECF No. 101.) Plaintiff did not file a reply. For the reasons explained below, the Motion for Preliminary Injunction is **DENIED**.

**I.    BACKGROUND**

    The Court recounts only the facts necessary to resolve the present motion and otherwise adopts the background of the Court's January 9, 2024 Opinion. (*See* ECF No. 67.); *Cordero v. Emrich*, No. 20-5654, 2024 WL 94998 (D.N.J. Jan. 9, 2024). Plaintiff Misael Cordero is a state prisoner, in his mid-fifties, currently incarcerated at the East Jersey State Prison ("EJSP") in Rahway, New Jersey. (ECF No. 65 ¶ 1b.) According to the State of New Jersey Department of

Corrections website, Plaintiff was incarcerated in September 1993 and ultimately sentenced in July 2002 to life in prison for Murder.[1]

In 2012, Plaintiff allegedly filed a different lawsuit in federal court against three NJSP employees for punishing him for filing grievances. (ECF No. 65. ¶ 10); *Cordero v. Warren*, No. 12-2136 (D.N.J.). In June 2019, Plaintiff was notified that he was going to be transferred to Northern State Prison—a prison in which inmates are placed in two-occupant cells also known as "double celling" or "double locking." (*Id.* ¶ 12.) According to Plaintiff, Defendant Amy Emrich ("Emrich"), an Assistant Superintendent of the New Jersey State Prison ("NJSP") initiated the transfer in retaliation against him for filing the 2012 suit, which was purportedly settled in May 2019. (*Id.* ¶¶ 10, 12, 13.) Plaintiff alleges that Emrich "knew" that subjecting him to "double locking" would create a risk of serious harm including "assault, rape, extortion, or murder." (*Id.* ¶¶ 15, 16.)

Plaintiff declined this transfer. (*Id.* ¶ 17.) Plaintiff was then charged with refusing to accept a housing assignment and was subject to a hearing before Defendant Tina Cortes ("Cortes"), a Hearing Officer at NJSP. (*Id.* ¶¶ 20, 21.) Cortes found Plaintiff "guilty" of refusing to accept a housing assignment and sanctioned him to, *inter alia*, administrative segregation and loss of phone privileges. (*Id.* ¶ 24.) Around this time, Cortes allegedly told Plaintiff that he could be transferred to any prison at any time for any reason "including retaliation." (*Id.* ¶ 22.)

In July 2019, Plaintiff was, once again, notified he was going to be transferred and, once again, he refused out of concern that he would be subject to a two-occupant cell. (*Id.* ¶ 30.) Later,

---

[1] The Court takes judicial notice of the State of New Jersey Department of Corrections Offender Details for Plaintiff Misael Cordero: https://www-doc.state.nj.us/DOC_Inmate/details?x=1074153&n=0. *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (taking judicial notice of public information on government website).

Plaintiff learned this transfer was to EJSP, a facility he claims he would not have declined had he been aware because of its "single-man cells." (*Id.* ¶¶ 31–32.) Nevertheless, he was once again "charged" with refusing to accept a transfer. (*Id.* ¶ 32.)

Plaintiff was ultimately transferred to EJSP at the end of July 2019 where he is imprisoned today. (*Id.* ¶ 39.) Despite requesting a single occupant cell, Plaintiff was initially placed in a double occupant cell. (*Id.* ¶¶ 40–42.) Based on a myriad of alleged issues with his cellmates, Plaintiff was transferred to a new double-cell unit on four separate occasions. (*Id.* ¶¶ 41–44.) On his fifth move, he was placed in a single occupancy cell. (*Id.* ¶ 44.)

This case commenced with the filing of an initial complaint in May 2020 (ECF No. 1), which was subsequently amended in October 2023 (ECF No. 65). Plaintiff brought claims pursuant to 42 U.S.C. § 1983 under the First Amendment, Eighth Amendment, and Fourteenth Amendment relating to his prison housing arrangements. (*See generally* ECF No. 65.) Following the Amended Complaint, Defendants filed a motion to dismiss the Eighth and Fourteenth Amendment claims, which was subsequently granted by the Court. (ECF No. 76.) Defendants did not move to dismiss the First Amendment claim and, thus, it remains the only live claim in this matter.

The allegations underlying the First Amendment claim are that Defendants attempted to transfer Plaintiff to a two-occupant cell in retaliation for filing suit against NJSP officials. (*Id.* ¶¶ 10–13.) Plaintiff alleges that Defendants' efforts to subject Plaintiff to "double locking" was to deter him from seeking future redress, *e.g.*, file lawsuits. (*Id.* ¶ 46.)

The present Motion for a Preliminary Injunction asks the Court to enjoin the New Jersey Department of Corrections (the "DOC") from moving Plaintiff to a two-occupant cell. (*See generally* PI.) Plaintiff asserts that his current prison—EJSP—is closing soon and he will be forced to live in a two-occupant cell at a different facility, subjecting him to serious risks of harm. (*Id.* at

3

1–2.) He contends that a two-occupant cell would put him in danger of murder, rape, assault, and extortion. (*Id.* at 3.)

## II. LEGAL STANDARD

Preliminary injunctions are not automatic and are reserved for "extraordinary situations." *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 198 (3d Cir. 2024). A plaintiff is entitled to a preliminary injunction if he provides that "(1) he is likely to succeed on the merits, (2) he will suffer irreparable harm without preliminary relief, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213, 218 (3d Cir. 2025) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)).

The movant bears the burden of showing his entitlement to an injunction. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)). "[F]ailure to establish any element . . . renders a preliminary injunction inappropriate." *Id.* (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)). The first two factors are "gateway factors," which must be decided first. *Id.* (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)).

Importantly, the injuries claimed in a motion for preliminary injunction, must bear "a relationship . . . [to] the conduct asserted in the complaint." *Ball v. Famiglio*, 396 F. App'x 836, 837–38 (3d Cir. 2010) (internal quotation marks and citation omitted). As such, a request for injunctive relief is "legally deficient" when it is "targeted at potential conduct that bears no relation to [plaintiff's] [live] claim." *Martin v. Keitel*, 205 F. App'x 925, 928–29 (3d Cir. 2006) (citation omitted). Further, a court has no power to issue a preliminary injunction against a non-party. *See*

4

*Sczesny v. New Jersey*, No. 22-2314, 2022 WL 2047135, at *16 (D.N.J. June 7, 2022) (citing Fed. R. Civ. P. 65(d)(2)(A)).

## III. DISCUSSION

Plaintiff's Motion for preliminary injunction, which seeks to prevent him from being placed in a two-occupant cell, must be denied because he has failed to show a likelihood of success on the merits and irreparable harm. Plaintiff fails to satisfy the "particularly heavy" burden to obtain a mandatory preliminary injunction altering the status quo. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (citing *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980)).

### A. LIKELIHOOD OF SUCCESS

To meet the first prong, a movant "need[] only to show a likelihood of success on the merits (that is, a reasonable chance, or probability, of winning) to be granted relief." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011). The movant's showing must be "significantly better than negligible but not necessarily more likely than not" that it will ultimately prevail. *Reilly*, 858 F.3d at 179.

As an initial matter, Plaintiff appears to argue that the harm stemming from his potential double celling violates the Eighth Amendment. (*See* PI at 6.) However, the Court already twice dismissed Plaintiff's Eighth Amendment claims (*see* ECF No. 6 at 4–5; ECF No. 76 at 12), and there can be no likelihood of success on the merits of a dismissed claim. *See, e.g., Planker v. Cristie*, No. 13-4464, 2017 WL 2265786, at *3 (D.N.J. May 24, 2017) (denying preliminary injunction motion where its underlying allegations were dismissed previously). Even if Plaintiff *could* bring this Motion under the Eighth Amendment, it is well-settled that double celling is not *per se* unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (holding that double celling does not *per se* violate the Eighth Amendment); *e.g., Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 468

5

(M.D. Pa. 2010) (collecting cases). Plaintiff acknowledges this. (Pl at 2.) However, "when in combination with other sufficiently adverse conditions and when accompanied by a showing of deliberate indifference by the defendants, double celling *might* constitute a constitutional violation." *Macchione v. Coordinator Adm'r in Washington, D.C.*, 591 F. App'x 48, 50 (3d Cir. 2014) (citing *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996)) (emphasis added).

In any event, Plaintiff's Motion fails to show a viable constitutional violation under the sole surviving claim brought under the First Amendment. First Amendment retaliation requires a showing of: "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Plaintiff's Motion fails to make any mention of the First Amendment or the required elements of a retaliation claim. (*See* Pl.) While it is true that a transfer to another prison *could* constitute "adverse action" in appropriate situations, Plaintiff has not met his burden to show that such a situation arises here. *See DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010). "[I]t is well-established that prisoners do not have a constitutional right to any particular housing assignment." *Lawson v. Haupt*, 677 F. App'x 43, 45 (3d Cir. 2017) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245–48 (1983)). In fact, a transfer is not *per se* an adverse action, rather a plaintiff must explain "how the transfer was adverse." *See Collazo v. Rozum*, 646 F. App'x 274, 276 (3d Cir. 2016); *Verbanik v. Harlow*, 512 F. App'x 120, 122–23 (3d Cir. 2013) (transfer to a less desirous cell is not an adverse act). Even in construing the Complaint and the present Motion in the light most favorable to the *pro se* plaintiff, the Court cannot credit the conclusory and general allegations that double celling would subject plaintiff to "assault, rape, extortion, or murder." (ECF

No. 65 ¶ 15.) Given that this arrangement is not *per se* unconstitutional, Plaintiff has failed to show how this assignment would uniquely subject him to such harm.

Further, the law in this Circuit is clear that mere threats to take a certain action do not amount to adverse actions sufficient to establish a First Amendment retaliation claim. *E.g.*, *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) ("[T]hreats alone do not constitute retaliation."). Although Plaintiff alleges in his Motion that there have been threats of moving to a double cell, he has not alleged that any such move is imminent. Thus, Plaintiff cannot show a likelihood of success on the First Amendment claim where an "adverse action" is not present or forthcoming.[2] Plaintiff fails meet this heavy burden to show a likelihood of success.

### B. IRREPARABLE HARM

Even if Plaintiff met his burden as to a likelihood of success on the merits, Plaintiff still fails to show irreparable harm. "[A] showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of *immediate* irreparable harm.'" *Rivera v. Pa. Dep't of Corr.*, 346 F. App'x 749, 750 (3d Cir. 2009) (emphasis in original) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992)). Further, the harm must be "irreparable" in that it "cannot be redressed by a legal or an equitable remedy following a trial." *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 610 (3d Cir. 2024) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)).

---

[2] Additionally, Plaintiff's Motion, which seeks to enjoin the DOC, a nonparty, requests relief beyond the Court's powers. *See Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 13845343, at *2 (D.N.J. May 13, 2015) (citing *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996)) (recognizing injunctions must be denied against nonparties).

7

Here, the irreparable harm analysis significantly overlaps with the Court's discussion *supra* regarding Plaintiff's likelihood of success on the merits focusing on "adverse action." The alleged harm—that if he were put in a double cell he would be exposed to imminent risk of assault, rape, murder, and extortion—is based on the hypothetical possibility of a "remote future injury," rather than immediate, substantial harm. *See Talbert v. Corizon Med.*, 605 F. App'x 86, 87 (3d Cir. 2015) (a preliminary injunction cannot be issued "to eliminate a possibility of a remote future injury" (quoting *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980))). This is fatal to Plaintiff's ability to show irreparable harm. *See Louis v. Bledsoe*, 438 F. App'x 129, 130–31 (3d Cir. 2011) (inmate could not satisfy risk of immediate and irreparable injury based on general allegation that he was housed with potentially dangerous inmates). Simply put, Plaintiff's surmise of a hypothetical placement some time in the future that is subjectively less desirable to him does not constitute irreparable harm for the purposes of a preliminary injunction.

*First*, there is nothing in the record indicating that there are immediate plans to move Plaintiff to a double cell. While Plaintiff asserts that EJSP "will be closing very soon" and that he will be moved to a double cell (PI at 2), Defendants contend this is merely a rumor (ECF No. 101 at 4). Regardless, Plaintiff has not shown that—whether or not EJSP is closed—he will be immediately moved to a double cell.

*Second*, Plaintiff fails to meet his burden to show that even if a change in housing arrangement were imminent, that it would subject him to immediate and substantial risk of assault, rape, or murder. *See Zehring v. Sorber*, No. 20-3195, 2020 WL 7041759, at *17 (E.D. Pa. Dec. 1, 2020) ("Plaintiff's allegation that his current housing assignment places him at a risk of being attacked at some uncertain point in the future is too 'speculative' to warrant injunctive relief." (quoting *Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018))). Moreover, even if Plaintiff

were exposed to some harm in being moved to a double cell, it is reparable because Plaintiff could be moved back to a single cell at any point, just as he had been in the past. (*See* ECF No. 65 ¶¶ 41–44.) In this case, Plaintiff's allegations of potential harm are entirely speculative, and preliminary injunctive relief is not warranted.

Therefore, because Plaintiff has failed to satisfy the first two elements, the Motion for Preliminary Injunction is **DENIED**.[3]

Accordingly, for the reasons set forth above and for other good cause shown,

**IT IS** on this 24th day of June, 2025, **ORDERED** that:

1. Plaintiff's Motion for Preliminary Injunction (ECF No. 100) is **DENIED**; and

2. The Clerk's Office is directed to terminate the Motion at ECF No. 100; and

3. The Clerk's Office is directed to serve this Memorandum Order on Plaintiff by regular U.S. mail.

/s/ Robert Kirsch
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

---

[3] While the other two preliminary injunction factors need not be discussed, the Court finds the "balance of the equities" also weighs heavily against granting the motion. Such a preliminary injunction is disfavored in the prison context. *See, e.g., Rush v. Corr. Med. Servs., Inc.*, 287 F. App'x 142, 144 (3d Cir. 2008) (citation omitted); *Burgos v. Canino*, 334 F. App'x 457, 459 (3d Cir. 2009) ("[C]ourts 'must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them'" (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003))). Therefore, because courts affords prisons administrators substantial deference in governing themselves, the balance of equities strongly favors Defendants.