NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MISAEL CORDERO,<br><br>                    Plaintiff,<br><br>      v.<br><br>AMY EMRICH, *et al.*,<br><br>                    Defendants. | Civil Action No. 20-5654 (GC) (JTQ)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon *pro se* Plaintiff Misael Cordero's Appeal of the Magistrate Judge's Order (ECF No. 104) denying Plaintiff's Motion for Appointment of Pro Bono Counsel.  (ECF No. 105.)  Defendants opposed, and Plaintiff did not reply.  (ECF No. 113.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Motion is **DENIED**.

I.      **BACKGROUND**

Plaintiff is serving a life sentence and has been incarcerated for approximately 30 years. (*See* ECF No. 65 ¶¶ 3, 9.)  Plaintiff is currently incarcerated at East Jersey State Prison (EJSP). (*Id.*)  Defendants are the Assistant Superintendent and the Hearing Officer of New Jersey State Prison (NJSP).  (*Id.* ¶¶ 4-5.)

Plaintiff's Amended Complaint asserts that Defendants violated his constitutional rights in several ways after Plaintiff successfully sued NJSP.  (*See generally* ECF No. 65.)  In 2012, Plaintiff sued three officials of the NJSP because they took visits away to punish him for his grievances.

(*Id.* ¶10.)  In May 2019, Plaintiff settled the lawsuit.  (*Id.*)  As part of the settlement, Plaintiff alleges the NJSP "agreed to destroy all documents related to the illegal suspension of Plaintiff's visits" within 40 days and to pay him $5,000, with $3,000 going toward paying Plaintiff's "outstanding fines and penalties."  (*Id.* ¶ 11.)  Plaintiff alleges that despite this agreement, and although Emrich "has no authority to initiate a transfer on behalf of Plaintiff nor to transfer him," Emrich "tried to transfer" Plaintiff from NJSP, which houses one inmate per cell ("single-lock"), to Northern State Prison (NSP), which houses two inmates per cell ("double-lock").  (*Id.* ¶¶ 12-18.)  Emrich purportedly did this "to punish [Plaintiff] . . . for having sued and settled a lawsuit against [NJSP]" and "to deter him from suing" in the future, as Emrich knew that double-lock cells are more dangerous for inmates.  (*Id.* ¶¶ 14, 18.)  Plaintiff further alleges that although Emrich "has a list with the names of other inmates who had requested to be transferred, their request had been approved, and were waiting to be transferred," Emrich chose Plaintiff for transfer instead of the inmates who requested to be transferred.  (*Id.* ¶ 14.)

Plaintiff declined transfer to NSP and was subsequently charged with refusing to accept a housing unit assignment.  (*Id.* ¶¶ 17, 20.)  Plaintiff "submitted a three-page statement for the record and pleaded not guilty."  (*Id.* ¶ 21.)  At the hearing for the infraction, Hearing Officer Cortes told Plaintiff "he could be transferred to any prison at any time and for any reason including retaliation."  (*Id.* ¶ 22.)  Cortes denied Plaintiff's request to call two attorneys involved with the settlement agreement as witnesses.  (*Id.* ¶ 23.)  Cortes then found Plaintiff "guilty of refusing to accept a housing unit assignment and sanctioned him with 31 days of administrative segregation, 30 days loss of commutation time, and 15 days loss of phone."  (*Id.* ¶ 24.)  "Plaintiff refused to sign the adjudication papers" because they purportedly "did not memorialize everything that was said and

2

transpired during the hearing." (*Id.* ¶ 25.)  Plaintiff appealed the decision, but Emrich provided only "a belated response . . . rubber stamping" Cortes' decision.  (*Id.* ¶¶ 27-29.)

While in administrative segregation, Plaintiff was again told he was going to be transferred but was not told where.  (*Id.* ¶ 30.)  Plaintiff "refused the transfer because he did not want to end up double locking and at risk of being harmed or killed, or having to hurt or kill another inmate in self-defense" and was again charged with refusing to accept a housing assignment.  (*Id.*)  Plaintiff later learned that the proposed transfer was to EJSP, not NSP.  (*Id.* ¶ 31.)  Plaintiff "would not have refused" transfer to EJSP, because it "has housing units with single-man cells."  (*Id.*)  Plaintiff therefore again pleaded not guilty, but Cortes sanctioned Plaintiff with "40 days of administrative segregation suspended for 60 days, 40 days loss of commutation time, and 15 days loss of yard."  (*Id.* ¶ 33.)  Plaintiff again refused to sign the adjudication papers.  (*Id.* ¶ 34.)  Emrich signed them on behalf of NJSP.  (*Id.* ¶ 33.)

Plaintiff accordingly brought claims under 42 U.S.C. § 1983 for violations of the First Amendment, Eighth Amendment and Fourteenth Amendment, seeking injunctive relief.  (*Id.* at 3, 15-19.)[1]  Defendants moved to dismiss the Eighth Amendment and Fourteenth Amendment claims, which the Court granted.  (ECF Nos. 67, 77.)  As such, Plaintiff's claim under the First Amendment is the only remaining operative claim in this case.  Plaintiff alleges that Emrich retaliated against him for his successful lawsuit by seeking to have him transferred and by punishing him with administrative segregation, (ECF No. 65 ¶¶ 46, 48), and that Cortes retaliated against him for the same by imposing sanctions against him, including administrative segregation, (*id.* ¶ 47).

---

[1]     Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

On April 7, 2025, Plaintiff filed a Motion to Appoint Pro Bono Counsel.[2]  (ECF No. 99.)
On July 28, 2025, the Magistrate Judge denied Plaintiff's Motion.  (ECF No. 104.)  The Magistrate Judge assumed *arguendo* that Plaintiff's remaining claim had "arguable merit in fact and law" before finding that the additional factors the court considers upon such a request did not counsel in favor of the appointment of pro bono counsel.  (*Id.* at 4-7.)  The Magistrate Judge found most considerations weighed against appointing counsel: Plaintiff had "a sufficient understanding of the legal process to prosecute his claims at this stage of the case," (*id.* at 4), the legal issues faced by Plaintiff were "not unusually complex," (*id.* at 5), Plaintiff had "capably pursued discovery thus far," (*id.* at 6), Plaintiff did not establish that the case would turn on credibility determinations, (*id.*), and Plaintiff did not establish that expert testimony was necessary, (*id.* at 6-7).  The Magistrate Judge found that Plaintiff's *in forma pauperis* status weighed in favor of appointing counsel, but this alone did not justify the appointment of counsel.  (*Id.* at 7.)  The Court concluded that the appointment of counsel was not warranted at the time and denied Plaintiff's motion without prejudice.  (*Id.* at 8.)  However, the Magistrate Judge's decision stated that the Court "will continue to monitor the issues raised by the Plaintiff and may appoint counsel sua sponte if changing circumstances warrant."  (*Id.* at 7.)

On August 14, 2025, Plaintiff appealed that Order to this Court.[3]  (ECF No. 105.)

---

[2]    Plaintiff first requested the appointment of pro bono counsel on July 15, 2022.  (ECF No. 16.)  Plaintiff filed a Motion for leave to file a third-party subpoena or, in the alternative, for the appointment of pro bono counsel for the limited purpose of helping Plaintiff with discovery.  (*Id.*)  On December 15, 2022, the Court granted Plaintiff's subpoena request and denied the request for appointment of pro bono counsel as moot.  (ECF No. 37.)  On December 2, 2024, Plaintiff filed a letter seeking certain discovery and requesting the assistance of pro bono counsel.  (ECF No. 95.)  On March 5, 2025, the Magistrate Judge denied Plaintiff's request and gave Plaintiff 30 days to make a proper application to the Court.  (ECF No. 98.)

[3]    Plaintiff had fourteen days to appeal the Magistrate Judge's determination of a non-dispositive matter.  *See* Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  While the Court did not

## II.   LEGAL STANDARD

In this district, magistrate judges are authorized to determine any pretrial, non-dispositive motion in civil cases.  *See* L. Civ. R. 72.1(a)(1); *see also* 28 U.S.C. § 636(b)(1)(A).  Once a magistrate judge issues an order, the parties may, within fourteen days, appeal to the district court for further review.  *See* Fed. R. Civ. 72(a).  The party appealing bears the burden of demonstrating that the magistrate judge's decision should be overturned.  *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

Because a magistrate judge "is accorded wide discretion in addressing non-dispositive motions," the District Court ordinarily will reverse, modify, or vacate a non-dispositive order only if that "order is 'clearly erroneous or contrary to law'"—even if the District Court "would have decided the issue differently." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  "A ruling is contrary to law 'if the magistrate judge has misinterpreted or misapplied applicable law,' whereas a finding is clearly erroneous when the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *Tormasi v. Hayman*, Civ. No. 08-4950, 2009 WL 3030081, at *8 (D.N.J. Sep. 16, 2009) (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 608 F. Supp. 2d 607, 611 (D.N.J. 2009)).  Findings appealed as contrary to law are reviewed *de novo*.  *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase "contrary to law" indicates plenary review as to matters of law.").

"Some courts find that where an appeal seeks review of a procedural matter that a magistrate judge routinely is called upon to decide such as appointment of pro bono counsel, the abuse of discretion standard may be applied." *Hennessey v. Atl. Cnty. Dep't of Pub. Safety*, Civ.

---

receive the appeal until August 14, 2025, the envelope is postmarked August 12, 2025.  (ECF No. 105-1.)  Given Plaintiff's *pro se* status, the Court accepts the appeal as timely.

No. 06-143, 2008 WL 4691990, at *2 n.4 (D.N.J. Oct. 22, 2008) (citation modified). "An abuse of discretion occurs 'when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted.'" *Harrington v. Bergen Cnty.*, Civ. No. 14-5764, 2017 WL 4387373, at *1 (D.N.J. Oct. 3, 2017) (quoting *Leap Sys., Inc. v. Moneytrax, Inc.*, Civ. No. 05-1521, 2010 WL 2232715, at *3 (D.N.J. June 1, 2010)). Because that standard is more deferential, it is unnecessary to apply the abuse of discretion standard if the Magistrate Judge's ruling is not erroneous or contrary to law. *Hennessey*, 2008 WL 4691990, at *2 n.4.

## III.    **DISCUSSION**

Plaintiff appeals the Magistrate Judge's denial of Plaintiff's Motion to Appoint Pro Bono Counsel. (ECF No. 105.) Under 28 U.S.C. § 1915, "[t]he court may request an attorney to represent any person unable to afford counsel" in a civil action. 28 U.S.C. § 1915(e)(1). This statute "gives district courts broad discretion to request an attorney to represent an indigent civil litigant." *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993); *see also Hennessey*, 2008 WL 4691990, at *2 ("The appointment of counsel is a privilege rather than the right of a litigant, and it lies within the sole discretion of the Court.").

As a threshold matter, the Court determines whether a plaintiff's claim is of arguable merit in fact and law. *Tabron*, 6 F.3d at 155 (citing *Maclin v. Freake*, 650 F.2d 885 (7th Cir. 1981) (per curiam)). If so, the Court considers "further criteria" for ascertaining whether the circumstances warrant the appointment of counsel. *Id.* These factors include: the plaintiff's ability to present his case, the complexity of the issues, the need for factual investigation, the likelihood that the case will turn on credibility determinations, and the need for expert testimony. *Id.* at 155-57; *see also Parham v. Johnson*, 126 F.3d 454, 457-58 (3d Cir. 1997).

For the purpose of deciding this Motion, the Court will assume that Plaintiff's remaining claim of First Amendment retaliation is of arguable merit in fact and law.[4] As such, the Court turns to consideration of the factors that "bear on the need for appointed counsel."[5] *Id.* at 155.

### A.    Plaintiff's Ability to Present the Case

The first factor considers "the plaintiff's ability to present his or her own case." *Roudabush v. Bitener*, Civ. No. 15-3185, 2018 WL 11463501, at *2 (D.N.J. Oct. 5, 2018).  Courts consider several factors in this regard: "the plaintiff's education, literacy, prior work experience, and prior litigation experience," as well as "a plaintiff's ability to understand English . . . [and] the restraints placed upon [a prisoner plaintiff] by confinement." *Tabron*, 6 F.3d at 156.  However, "the ability to file and respond to motions" does not "conclusively establish that [a plaintiff is] able to present his own case" when, for example, the prisoner lacks legal experience or discovery rules "clearly put him at a disadvantage in countering the defendant's discovery tactics."  *Montgomery v. Pinchak*, 294 F.3d 492, 501 (3d Cir. 2002).

Plaintiff has not carried his burden of showing that the Magistrate Judge's decision regarding this factor was clearly erroneous or contrary to law.  Plaintiff asserts that he intends to take depositions or seek declarations of two prison officials who would contradict Defendants' testimony regarding the retaliatory nature of the transfer. (ECF No. 105 at 2-3.)  Plaintiff claims

---

[4]    The Magistrate Judge assumed *arguendo* that Plaintiff's remaining claim satisfied this threshold factor.  (*See* ECF No. 104 at 4.)  Plaintiff does not address the merit of this claim in his brief.  (*See generally* ECF No. 105.)

[5]    Courts also consider "whether the plaintiff can attain and afford counsel on his own behalf." *Roudabush v. Bitener*, Civ. No. 15-3185, 2018 WL 11463501, at *2 (D.N.J. Oct. 5, 2018) (citing *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997)).  The Magistrate Judge found this factor weighed in favor of the appointment of counsel because "Plaintiff is proceeding *in forma pauperis*" and "[n]othing in the record suggest[ed] that there ha[d] been a change in circumstances such that Plaintiff can now afford counsel."  (ECF No. 104 at 7.)  The parties do not dispute this factor.

he cannot conduct such discovery without the assistance of a lawyer "because as a prisoner he is unable to reach and contact these two individuals who are presently working at other institutions." (*Id.*) Plaintiff's argument, however, goes toward his need for factual investigation—not Plaintiff's ability to present his case. This factor focuses on Plaintiff's ability to comprehend and apply legal principles rather than on evidentiary gaps in Plaintiff's case. *See Montgomery*, 294 F.3d at 502 (considering whether the plaintiff was a "sophisticated 'jailhouse lawyer'" and the number of claims he had brought since incarcerated). As the Magistrate Judge stated, Plaintiff's filings in this case "demonstrate that he is literate, proficient in English, and has an understanding of legal standards and procedures." (ECF No. 104 at 4.) The docket indeed demonstrates that Plaintiff has vigorously prosecuted this case by adeptly filing many motions, drafting the original and Amended Complaints, and navigating written discovery. Therefore, the Magistrate Judge's determination that this factor weighed against appointing counsel was not clearly erroneous or contrary to law.

**B.    Complexity of Legal Issues**

The second factor considers the complexity of the case's legal issues. *Roudabush*, 2018 WL 11463501, at *2. The Court "should be more inclined to appoint counsel if the legal issues are complex." *Tabron*, 6 F.3d at 156 (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). Indeed, "where the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." *Id.* Moreover, when assessing complexity, "courts must . . . look to the proof going towards the ultimate issue and the discovery issues involved." *Parham*, 126 F.3d at 459. Courts have found that cases involving First Amendment retaliation claims are not "unduly complex for a sophisticated litigant." *See Roudabush*, 2018 WL 11463501, at *4.

The only claim remaining in this case is for First Amendment retaliation, which the Magistrate Judge described as a claim that is "not unusually complex," noting that Plaintiff

asserted no argument to the contrary. (ECF No. 104 at 5.) *See also Roudabush*, 2018 WL 11463501, at *4. While Plaintiff now asserts the case is complex because it "requires the investigation and deposition" of prison employees, this argument was not before the Magistrate Judge. (*See* ECF No. 99; ECF No. 105 at 4.) And although Plaintiff argues the Magistrate Judge incorrectly evaluated the case's complexity by applying an "unusually complex" standard, (ECF No. 105 at 4), Plaintiff provides no support for this assertion. *Cf. Montgomery*, 294 F.3d at 502 (describing legal issues as "sufficiently complex" when considering this factor). As such, the Magistrate Judge's finding that this factor weighed against appointing counsel was not clearly erroneous or contrary to law.

### C.   Need for Factual Investigation

The third factor considers "the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation." *Roudabush*, 2018 WL 11463501, at *2. "Where the claims are likely to require extensive discovery and compliance with complex discovery rules, appointment of counsel may be warranted." *Tabron*, 6 F.3d at 156. When determining this factor, "courts should consider a prisoner's predicament in attempting to obtain facts, i.e. the confines of prison." *Id.*

In finding this factor weighed against appointment of counsel, the Magistrate Judge reasoned that "[w]ithout any elaboration, Plaintiff contends that he is unable to conduct discovery" involving the prison officials and noted that Plaintiff has "capably pursued discovery thus far." (ECF No. 104 at 5.) This was not erroneous or contrary to law. *See also Derrick v. Cuzzupe*, Civ. No. 22-4436, 2024 WL 3823977, at *3 (D.N.J. Aug. 14, 2024) (finding this factor weighed against pro bono counsel when the plaintiff did not "explain why the mechanisms provided for party discovery under the Federal Rules of Civil Procedure," such as "interrogatories and discovery requests," were "inadequate"). While Plaintiff asserts that the Magistrate Judge "overlooked"

9

Plaintiff's need to depose or obtain declarations from the prison officials, (ECF No. 105 at 3), the Magistrate Judge's decision makes clear that it was based on Plaintiff's failure to "elaborate[e]" on why Plaintiff was unable to conduct this discovery when he had "capably" conducted other discovery, (ECF No. 104 at 5-6). As such, the Court finds that the Magistrate Judge's consideration of this factor was not clearly erroneous or contrary to law. The Magistrate Judge also noted that he would continue to monitor the case and will *sua sponte* appoint counsel as necessary as the case progresses through discovery. (ECF No. 104 at 7.)

### D.      Credibility Determinations

The fourth factor considers "the amount a case is likely to turn on credibility determinations." *Roudabush*, 2018 WL 11463501, at *2. "[W]hen witness credibility is a key issue, 'it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross examination.'" *Tabron*, 6 F.3d at 156 (quoting *Maclin*, 650 F.2d at 888). But because "it is difficult to imagine a case that does not" rely upon credibility, "when considering this factor, courts should determine whether the case [is] solely a swearing contest." *Parham*, 126 F.3d at 460. However, "[w]hen it is unclear whether the case will turn on credibility determinations, then the fourth factor does not support the appointment of pro bono counsel." *Derrick*, 2024 WL 3823977, at *4 (citing *Ryan v. Robinson*, Civ. No. 22-1175, 2023 WL 3034130, at *3 (D.N.J. Apr. 21, 2023)).

The Magistrate Judge's decision noted that "most cases will involve conflicting testimony," but explained that Plaintiff "fail[ed] to demonstrate the extent to which this case will hinge on credibility determinations." (ECF No. 104 at 6.) While Plaintiff asserts that the case "involve[s] credibility determinations" and could turn into a "swearing contest," (ECF No. 105 at 5), the Magistrate Judge determined that this factor weighed against the appointment of counsel because Plaintiff failed to establish that the case would "solely" be a swearing contest, as opposed to one

10

with a mix of evidence, (ECF No. 104 at 6). *See also Parham*, 126 F.3d at 460. Because the extent of the credibility determinations was unclear, the Magistrate Judge's finding that this factor did not support the appointment of pro bono counsel was not erroneous or contrary to law. *See Ryan*, 2023 WL 3034130, at *3.

### E.       Need for Expert Testimony

The fifth factor Plaintiff disputed considers "whether the case will require the testimony of expert witnesses." *Roudabush*, 2018 WL 11463501, at *2. The need for an expert "weighs heavily in favor of appointment of counsel." *Parham*, 126 F.3d at 460. However, the appointment of counsel is not required in every case in which expert testimony may be warranted. *Lasko v. Watts*, 373 F. App'x 196, 202 (3d Cir. 2010).

Plaintiff argues that the Magistrate Judge erred because the case requires experts as it "deals with the psychological and physical harms that double celling causes on prisoners, the duties owe[d] to Plaintiff by Defendants . . ., and the state and federal laws that Defendants are bound to." (ECF No. 105 at 6.) But the Magistrate Judge reasoned that the mere assertion that Plaintiff needed all of these experts "[did] little to show the Court that expert testimony will, in fact, be necessary." (ECF No. 104 at 6-7.) Because even when a party seeking pro bono counsel establishes that expert testimony is warranted, the appointment of counsel is still not required, the Magistrate Judge's decision regarding this factor was not clearly erroneous or contrary to law.

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion (ECF No. 105) is **DENIED** without prejudice.  An appropriate Order follows.


Dated:  June 30, 2026

_____

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**